2012 VT 23

# In re D.K., Juvenile

[47 A.3d 347]

No. 11-076

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed March 23, 2012

*Christina Rainville*, Bennington County Chief Deputy State's Attorney, Bennington, for Plaintiff-Appellant.

*David F. Silver* and *Timothy M. Andrews* (On the Brief) of *Barr, Sternberg, Moss, Lawrence & Silver, P.C.*, Bennington, for Defendant-Appellee.

¶ 1. **Johnson, J.** The issue in this case is whether the State may prosecute an adult defendant for crimes alleged to have occurred when he was a juvenile between the ages of ten and fourteen years. The prosecution is late, not through any fault of the State, because the alleged victims did not come forward until defendant was eighteen years of age and beyond the jurisdiction of the family division. The State, recognizing this jurisdictional difficulty, tried to file the information in the criminal division. The criminal division transferred the case to the family division because it found there was no criminal jurisdiction to adjudicate even the most serious of the offenses without first filing the matter in the family division. The family division, however, determined it was without jurisdiction to entertain the charges because defendant had reached eighteen years of age. Accordingly, it dismissed all of the charges against defendant.

¶ 2. On appeal, the State argues that the family division erred by dismissing the more serious felony charges because: (1) a recent legislative enactment addressing what it calls a "gap" in the jurisdictional provisions of the statutes is a mere clarification demonstrating that the Legislature had always intended that adult defendants be subject to prosecution for serious crimes committed when they were juveniles; and (2) even if the new amendment does not clarify the statutes and fill the gap, there is jurisdiction in the criminal division because that division has always had jurisdiction over all serious felonies. We conclude that: (1) the Legislature's recent enactment did not clarify existing law but rather established entirely new law that cannot be applied retroactively to this case; therefore, to the extent that the Legislature has filled the "gap," it has done so only prospectively; and (2) the statutory scheme applicable at the time of the offenses plainly did not allow either the family or criminal division to exercise its jurisdiction over an adult defendant accused of offenses committed as a juvenile under the age of fourteen. Accordingly, we affirm the family division's order dismissing all charges in this case.

¶ 3. In July 2010, the State filed an information alleging that when the eighteen-year-old defendant was between the ages of eleven and thirteen he sexually assaulted, through mouth-to-genital contact, one younger male cousin on three occasions, and that when he was between the ages of twelve and fourteen he subjected another younger male cousin to lewd and lascivious acts on four occasions. Before arraignment or a probable cause determination, the criminal division ordered the parties to submit memoranda on the question of whether it had initial jurisdiction to consider the charges. In an October 2010 decision, the criminal division removed the four lewd-and-lascivious counts to the family division and ordered that the three sexual-assault counts be redocketed in the family division as a delinquency petition.

¶ 4. Shortly thereafter, defendant filed a motion in the family division to dismiss all of the charges. The State acknowledged that the family division's jurisdiction was limited to juveniles under the age of eighteen, but nevertheless argued that the court should accept jurisdiction over the lewd and lascivious conduct charges and transfer the sexual assault charges to the criminal division. In February 2011, the family division issued a decision concluding that: (1) it lacked jurisdiction over the lewd and lascivious conduct charges because defendant had reached his eighteenth birthday;

and (2) for the same reason, it lacked jurisdiction to transfer the sexual assault charges to the criminal division, given the statutory requirement that such charges against juveniles be filed in the first instance in the family division.

¶ 5. The State appeals the dismissal of only the sexual assault counts, arguing first that the Legislature's recent clarification of the statutes solves the jurisdictional issue and demonstrates that the Legislature had always intended defendants to be subject to criminal prosecution for crimes committed while they were children, even if those offenses were not reported or discovered until after the juvenile reached adulthood. We conclude that this argument is unavailing.

¶ 6. During the 2011 legislative session, after the family division filed its decision in this case, the Legislature enacted a statute, codified as 33 V.S.A. § 5204a, creating jurisdiction and detailed procedures for the family division in the first instance (and potentially the criminal division upon transfer from the family division) to adjudicate charges against adult defendants for offenses allegedly committed when they were juveniles. 2011, No. 16, § 2. The newly created statute provides that a proceeding may commence in the family division against an adult defendant if the petition alleges that the defendant committed one of certain specified serious crimes, no juvenile petition had ever been filed based on the alleged conduct, and the statute of limitations had not yet tolled on the alleged offense. 33 V.S.A. § 5204a. If certain criteria are met, and upon consideration of detailed factors set forth in the statute, the family division may do one of three things: (1) transfer the case to the criminal division in the interest of justice and public safety; (2) order the defendant, if under twenty-three years of age, to be treated as a youthful offender; or (3) dismiss the petition. *Id.* § 5204a(b)-(c). Among the statute's numerous criteria and factors for the court's consideration are those that take into account the differences in culpability and treatment for offenses committed by juveniles as opposed to adults.[1]

---

[1] For example, § 5204a(b)(3) provides that the family division may consider the following factors in determining whether public safety and the interests of justice require a transfer to the criminal division:

> (A) The maturity of the defendant as determined by consideration of his or her age; home; environment; emotional, psychological, and

¶ 7. Before the enactment of § 5204a, the statutory scheme did not provide jurisdiction or procedures for adjudicating charges against adult defendants based on offenses committed when they were under the age of fourteen. Nevertheless, the first section of the act creating § 5204a states, in part, as follows: "This act clarifies, as the general assembly had always intended, that under the proper circumstances and for serious offenses, the state may bring charges against a person 18 years of age or older who committed a crime before turning 18." 2011, No. 16, § 1. The State relies upon this statement as evidence that the old statutory scheme, which the State concedes applies to defendant, allows the family division to infer that it may overlook its most basic and explicit statutory limitation to exercise jurisdiction over this eighteen-year-old defendant and transfer this case to the criminal division. The State's position does not withstand scrutiny.

¶ 8. Although "[t]he general presumption is that legislation is intended to apply only prospectively," the presumption may be rebutted when the Legislature enacts a clarification of a misapplied or misinterpreted statute, thereby revealing its true meaning. *State v. Kenvin*, 2011 VT 123, ¶ 24, 191 Vt. 30, 38 A.3d 26. It is true that the Legislature in this instance took pains to describe its actions as a clarification of its prior intent, and while the Legislature's statement of its intent is always of interest to this Court, our review must be based on the substantive analysis of the statutory amendment. If the amendment has created new law, the law may not be applied retroactively, and the old law may not be validly interpreted as implying what the new law requires. In these circumstances, any statement of legislative intent that is

physical maturity; and relationship with and adjustment to school and the community.

(B) The extent and nature of the defendant's prior criminal record and record of delinquency.

(C) The nature of past treatment efforts and the nature of the defendant's response to them.

(D) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner.

(E) The nature of any personal injuries resulting from or intended to be caused by the alleged act.

(F) Whether the protection of the community would be best served by transferring jurisdiction from the family division to the criminal division of the superior court.

contrary to what the Legislature has actually done is not controlling and must be disregarded.

 ¶ 9. Here, the Legislature's attempt to clarify the law in 2011 after defendant was charged created an entirely new jurisdictional statute providing procedures for adjudicating delinquency petitions involving adult defendants where none existed before. The new statute is plainly inconsistent with the prior law and cannot be considered merely a clarification of what a previous Legislature had intended the statute to mean.

¶ 10. The State argues, however, that even if the Legislature's 2011 amendment cannot be considered a clarification of the law as it existed at the time the instant charges were brought, the law at that time still plainly provided jurisdiction in the criminal division to adjudicate those charges. According to the State, although the adult defendant may have been beyond the family division's jurisdiction, the criminal division has general jurisdiction "to try, render judgment, and pass sentence in prosecutions for felonies," 4 V.S.A. § 32(a), without regard to the age of the defendant. Moreover, the State notes that prosecutions for sexual assault of child victims are permitted until "the earlier of the date the victim attains the age of 24 or 10 years from the date the offense is reported," 13 V.S.A. § 4501(c), neither of which was reached in this case before defendant was charged. Thus, in the State's view, the criminal division had continuing jurisdiction to adjudicate the charges it brought against defendant. This position, the State maintains, is further supported by the Legislature's important public policy goals of protecting minors from sexual abuse and rehabilitating sex offenders.

 ¶ 11. None of these arguments is consistent with the statutory scheme in place at the time the charges were brought in this case, which provided the family division with exclusive original jurisdiction to adjudicate charges alleging delinquent acts committed by defendants under the age of fourteen. As a general matter, "[n]otwithstanding any other provision of law to the contrary, the family division shall have exclusive jurisdiction to hear and dispose of . . . [a]ll juvenile proceedings filed pursuant to chapters 51, 52, and 53 of Title 33 . . . whether the matter originated in the criminal or family division of the superior court." 4 V.S.A. § 33(8) (emphasis added). More specifically, the family division "shall have exclusive jurisdiction over all proceedings

concerning a child who is or who is alleged to be a delinquent child . . . under the authority of the juvenile judicial proceedings chapters, except as otherwise provided in such chapters." 33 V.S.A. § 5103(a) (emphasis added). Moreover, "[t]he provisions of the juvenile judicial proceedings chapters shall be construed as superseding the provisions of the criminal law of this state to the extent the same are inconsistent with this chapter." 33 V.S.A. § 5101(b).

¶ 12. The family division's jurisdiction over delinquency petitions does not last indefinitely, however. Apart from youthful offender provisions not applicable here, "jurisdiction over a child shall not be extended beyond the child's 18th birthday." *Id.* § 5103(c). In short, the family division's jurisdiction over juvenile delinquency proceedings is exclusive and takes precedence over any inconsistent criminal law provisions, but normally ends when the juvenile reaches eighteen years of age.

¶ 13. The juvenile proceedings act generally defines "[c]hild" to include "[a]n individual who has been alleged to have committed or has committed an act of delinquency after becoming 10 years of age and prior to becoming 18 years of age." 33 V.S.A. § 5102(2)(C). Hence, whether an individual is deemed to be a child subject to the jurisdiction of the family division depends on the offender's age at the time the delinquent act was committed, not at the time that the offender was charged with the delinquent act. Relative to the instant circumstances, the definition of "child" adds the caveat that an individual alleged to have committed any of certain specified acts between the ages of ten and fourteen "may be treated as an adult," but only "*as provided therein.*" *Id.* § 5102(2)(C)(i) (emphasis added).

¶ 14. The juvenile transfer statutes determine when a juvenile may be treated as an adult in criminal court. Delinquency proceedings may be commenced, depending on the circumstances, by the filing of a delinquency petition in the family division or by transfer from another court, including the criminal division. 33 V.S.A. § 5201(a). Proceedings concerning a child alleged to have committed certain serious offenses specified in 33 V.S.A. § 5204(a) *between the ages of fourteen and eighteen* "shall originate" in the criminal or civil division, provided that "jurisdiction may be transferred [to the family division] in accordance with this chapter." 33 V.S.A. § 5201(c). The statute pertaining to transfers to the

family division from other courts provides that: (1) cases involving individuals who committed offenses not set forth in § 5204(a), including lewd and lascivious conduct, when they were under the age of sixteen "shall" be transferred to the family division; and (2) cases involving individuals who committed any offense between the ages of sixteen and eighteen or one of the offenses specified in § 5204(a), including sexual assault, *between the ages of fourteen and sixteen* "may" be transferred to the family division. 33 V.S.A. § 5203(a)-(b). The prosecutor may commence a case in either the family division or the criminal division when charging juveniles between sixteen and eighteen with offenses not listed under § 5204(a). See *id.* § 5203(c).

¶ 15. These transfer statutes, while explicitly providing in detail when charges against juvenile offenders may or must be filed in the criminal division — depending on the offense charged and the age of the offender — notably do not provide for filing charges in the criminal division in cases where the defendant was between the ages of ten and fourteen at the time the delinquent acts were committed, *even if the act is an offense listed under § 5204(a)*. In marked contrast, § 5204(a) provides that the family division "may" transfer to the criminal division delinquency petitions involving individuals alleged to have committed the serious offenses speci-fied therein, including sexual assault, between the ages of ten and fourteen. Upon a motion in the family division to transfer such a case to the criminal division, § 5204(d) sets forth seven factors for the court's consideration following a hearing.[2] Those factors are

---

[2] Subsection 5204(d) of Title 33 provides as follows:

In making its determination as required under subsection (c) of this section, the court may consider, among other matters:

(1) The maturity of the child as determined by consideration of his or her age, home, environment; emotional, psychological and physical maturity; and relationship with and adjustment to school and the community.

(2) The extent and nature of the child's prior record of delinquency.

(3) The nature of past treatment efforts and the nature of the child's response to them.

(4) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner.

(5) The nature of any personal injuries resulting from or intended to be caused by the alleged act.

grounded in the recognition that the acts were committed by a child under the age of fourteen.

¶ 16. Read together, these statutory provisions plainly and unambiguously demonstrate that the family division had exclusive original jurisdiction over all of the charges in this case — not only, as the State recognizes, the lewd and lascivious conduct counts for acts allegedly committed in part after defendant reached the age of fourteen, but also the sexual assault counts for acts allegedly committed when defendant was between the ages of eleven and thirteen. Moreover, the family division's exclusive original jurisdiction terminated upon defendant having reached eighteen years of age. In effect, the time period that the Legislature allowed for prosecution of the charged offenses that defendant allegedly committed as a child has expired. Indeed, the State acknowledges that the family division properly dismissed the State's delinquency petition for lack of subject matter jurisdiction.

¶ 17. We find no support for the State's position that, even assuming the family division properly dismissed the delinquency petition under the applicable law, the criminal division retains jurisdiction in this case by virtue of its general jurisdiction over criminal offenses such as sexual assault. This position is contrary not only to the plain meaning of the applicable statutory scheme, but also the relevant case law. See *Commonwealth v. A Juvenile*, 554 N.E.2d 1212, 1213 (Mass. 1990) (superseded by statute) (holding that similar statutory scheme did not allow criminal court to exercise jurisdiction over charges against juvenile who committed delinquent acts when he was twelve or thirteen years old but was not apprehended and prosecuted until he was nineteen years old); *State v. Dellinger*, 468 S.E.2d 218, 220-21 (N.C. 1996) (interpreting similar statutory scheme under similar circumstances and concluding that both plain meaning of statutes and legislative policy underlying those statutes gave juvenile court exclusive original jurisdiction pending transfer to criminal court). As the North Carolina Supreme Court stated in *Dellinger*, the criminal court "cannot obtain jurisdiction by the mere passage of time nor

---

(6) The prospects for rehabilitation of the child by use of procedures, services, and facilities available through juvenile proceedings.

(7) Whether the protection of the community would be better served by transferring jurisdiction from the juvenile court to the criminal division of the superior court.

can the mere passage of time transform a juvenile offense into an adult felony." *Dellinger*, 468 S.E.2d at 220.

■ ¶ 18. The State argues, however, that the Legislature must have contemplated jurisdiction in the criminal division under these circumstances because, in its view, the alternative of allowing the charged delinquent acts to go unprosecuted thwarts the legislative policies of protecting children and rehabilitating sex offenders. We disagree. The State's position is directly contrary to the explicit language of the statutory scheme in place at the time the charges were brought, and that language is not susceptible to a claim that it is irrational or inconsistent with the underlying statutory intent. Indeed, the State's position is undercut by the Legislature's enactment of the new amendment, which requires that delinquency petitions against adult defendants be commenced in the family division, thereby allowing the juvenile court to assess the underlying charges in a transfer hearing after applying essentially the same criteria contained in § 5204(d). 33 V.S.A. § 5204a(b).[3] Even under the new amendment, prosecution in criminal court for juvenile offenders is still a matter of discretion for the family division to exercise in the first instance. The fact that defendant could have been transferred by the family division to the criminal division under the statutes in effect at the time of the alleged offenses does not solve the jurisdictional problem. This Court cannot exercise on appeal the family division's discretion to transfer a juvenile to adult court, or presume that transfer would have been ordered in this case.

■ ¶ 19. Although defendant was eighteen years old when the State brought charges against him, this case concerns delinquent acts, the most serious of which occurred when defendant was between eleven and thirteen years of age. Juvenile proceedings are aimed primarily at protecting and rehabilitating youth in trouble. See 33 V.S.A. § 5101(a) (setting forth purposes underlying juvenile proceedings provisions). The legislative policy expressly seeks to rehabilitate juvenile offenders while removing "the taint of criminality and the consequences of criminal behavior." 33

---

[3] The only factor that is present in § 5204(d) but not § 5204a(b)(3) concerns amenability to rehabilitation and is located in § 5204a(b)(2)(A)(ii) as a factor to be considered in determining whether the youthful offender program would be appropriate for the adult defendant who is charged with a delinquent act committed as a child.

V.S.A. § 5101(a)(2). That policy necessarily takes into account that a child who commits an offense between the ages of ten and fourteen is still a child and that his culpability must be viewed in light of his age. Thus, the policy is not furthered by automatically subjecting to criminal prosecution adult defendants who committed delinquent acts when they were children under the age of fourteen. See *State v. Gifford*, 808 A.2d 1, 3 (N.H. 2002) (stating that to permit criminal prosecution of twenty-two-year-old defendant charged with delinquent acts committed when he was thirteen years old "would render meaningless the protections of [the criteria set forth in] the criminal responsibility statute" for juvenile offenders); *Dellinger*, 468 S.E.2d at 221 (stating that safeguards in juvenile proceedings "evince conceptual distinctions between the purpose of juvenile proceedings and that of adult criminal prosecutions").

¶ 20. Nor can it be considered absurd or irrational, in light of the relevant policy considerations, for the Legislature to have established a statutory scheme precluding the criminal prosecution of adult defendants accused of having committed delinquent acts when they were between the ages of ten and fourteen — even if that meant that they could not be prosecuted in the family division because of age-related jurisdictional limitations. While this Court construes statutes under the assumption that the Legislature did not intend to create genuinely absurd results, see *Braun v. Bd. of Dental Exam'rs*, 167 Vt. 110, 117, 702 A.2d 124, 128 (1997), we must be vigilant not to employ this rule of construction simply because we consider one result preferable to another. This is particularly true here, where the State's position, in effect, asks us to create criminal jurisdiction where it did not exist under the plain language of the applicable statutory scheme.

¶ 21. Notwithstanding the statement of legislative purpose in the 2011 amendment's preamble, it is impossible at this juncture to know what a prior Legislature intended by not providing jurisdiction in either the family or criminal division for the State to prosecute adults who committed delinquent acts as children under the age of fourteen. It could have been an oversight or it could have been an intentional policy decision. See *A Juvenile*, 554 N.E.2d at 1213 (recognizing that legislation not providing for prosecution of adult defendant charged with delinquent acts committed before fourteen years of age could be unintended "gap" in statute, but concluding that "[t]he Legislature is the proper

forum in which to raise this concern"). But given the specificity of the original statutory scheme as to when the criminal or family division may exercise its jurisdiction to adjudicate charges against juveniles — depending on the offense charged and the age of the defendant at the time the offense was committed — it is just as likely that the Legislature intended not to allow criminal prosecution of adult defendants who committed delinquent acts between the ages of ten and fourteen, even if it meant that they would be beyond the family division's jurisdiction. See *In re Coleman*, 459 N.Y.S.2d 711, 715 (Fam. Ct. 1983) (dismissing delinquency petition concerning adult defendant who committed charged acts as juvenile, and noting that gap in statute not providing for prosecution of adult defendants who committed delinquent acts when under age of sixteen was either "an oversight" or "more likely a brief eleven year change in legislative policy toward prosecution of persons under sixteen charged with certain acts").

¶ 22. In any event, we will not create jurisdiction where it did not exist to cover this perceived "gap," which has since been addressed by the Legislature. Given the applicable law and the circumstances of this case, neither the family nor criminal division had jurisdiction to adjudicate the State's charges alleging that the adult defendant committed three counts of sexual assault when he was a child between the ages of eleven and thirteen. Accordingly, the family division acted properly in dismissing these charges, along with the lewd and lascivious conduct charges.

¶ 23. The dissent identifies the issue before us as "what should be done with adults who are alleged to have committed felonies when still juveniles," *post*, ¶ 31, and indicates it "would much prefer" that the criminal division adjudicate this matter "rather than letting a calendar decide the outcome," *post*, ¶ 42. Apparently, the dissent's preference is based on two past cases in which juveniles between the ages of fourteen and sixteen committed egregious crimes. As the dissent acknowledges, however, the Legislature responded to those instances of juvenile crime by amending Vermont's juvenile justice laws. Indeed, in this case we construe those very laws, which unequivocally demonstrate that jurisdiction does not exist in either the family or criminal division to prosecute an adult defendant for crimes committed when he was under the age of fourteen. This Court's role is to determine legislative intent by construing the relevant law, not to provide our opinion on what should be done with adults who are alleged to

have committed felonies when still juveniles. That is the Legislature's prerogative and they have exercised it.

*Affirmed.*

¶ 24. **Dooley, J.,** concurring. I concur fully in the Court's decision. I write only to urge the Legislature to reconsider a decision made in the recent judicial branch restructuring legislation. In making this plea, I am trying to avoid situations where the wording of legislation fails to implement legislative intent such that important policy objectives cannot be reached. It is hard to read our decision in this case without concluding that we have invented a case processing machine so complicated that we cannot easily control its operating rules.

¶ 25. This case is fundamentally about what consequences should result when a young juvenile commits a serious crime but is not charged until he or she becomes an adult. We must hold that the answer is "no consequences" under the applicable statutory language, but that conclusion is reached only through pages of statutory analysis involving two statutory schemes and two trial court decisions reached independently by two different divisions of the superior court. I understand from the Legislature's statement of purpose accompanying the corrective legislation that it never intended this result:

> However, the general assembly never intended the juvenile procedures statutes to be used to permit a person who commits a crime to escape the consequences of that behavior simply by turning 18 before the state has filed charges against the person.

2011, No. 16, § 1. In my opinion, this deviation between legislative language and legislative intent occurred because we have a very complicated system of transferring cases between courts and, despite the best intentions, it is possible that some cases, perversely, will not have a home that comfortably or completely fits the circumstances of the case. In common jargon, these cases fall between the cracks.

¶ 26. Prior to restructuring, juvenile delinquency cases were adjudicated in family court, and criminal cases were adjudicated in district court. If the circumstances of the case indicated that it should not be adjudicated in the court in which it was filed, the case and its paper file had to be sent from the wrong court to the

right court, the necessary consequence of having separate first instance courts. Stated simplistically, the overall question was whether the circumstances warranted a juvenile rehabilitation disposition that continued only to adulthood in a confidential proceeding or, alternatively, warranted a criminal sentence in an open proceeding. Over time, the relevant circumstances became more and more complicated.

¶ 27. Restructuring created the opportunity to eliminate some of the complication. Since the family court and district court were merged into the superior court, it became possible to avoid transferring cases between courts and to get to the heart of the matter in one proceeding. Unfortunately, that did not happen in cases like this one because the jurisdictional walls between the components of the new superior court continued and cases must, accordingly, be transferred between divisions of the superior court by the same formal process that existed in the past. Cases continue to fall through the cracks just as they did before.

¶ 28. Thus, we have a situation where in many counties we have one court, with one judge and a unified staff, but the judge has to transfer the case to him or herself in order to match the disposition or sentence to the conduct. As we move to electronic records, even the symbolic physical transfer of the case file will disappear. In larger counties, there may be more than one judge, but the same unnecessary complexity persists despite the fact that each of the judges is a generalist who could adjudicate the whole case. In essence we have a system that is ruled by what hat the judge is wearing, and nothing more. If the judge fails to change hats properly, or no hat is available for the action sought, as here, the purposes of the statutory scheme are frustrated.

¶ 29. We can solve this problem by allowing a case to be filed in the criminal or family division, but then treating the filing point as a doorway into a proceeding that will evaluate the circumstances and determine how best to handle it with all relevant options available. In other words, we could have judges wearing no hats with the ability to conduct the proceeding as if he or she was wearing all possible hats. In viewing case processing this way, we are less likely to create cracks that will frustrate legislative intent and will be able to deal with cases that cross current jurisdictional boundaries as one case.

¶ 30. I urge the Legislature to review the jurisdictional walls between the components of the superior court and remove them

for cases like this, in order to allow the most expeditious route to a just result.

¶ 31. **Skoglund, J.,** dissenting. This case asks what should be done with adults who are alleged to have committed felonies when still juveniles. The majority believes the answer is "nothing." While I agree that the family division lacked jurisdiction and properly dismissed the charges of lewd and lascivious conduct and of sexual assault, I cannot find in the statutes any intent to allow defendants that have committed serious felonies to avoid any consequences by the mere fact that they were under fourteen years of age when they did so. I would hold that a case could be brought in the criminal division of the superior court, to which the Legislature has granted jurisdiction "to try, render judgment, and pass sentence in prosecutions for felonies and misdemeanors." 4 V.S.A. § 32(a).

¶ 32. Thirty years ago Vermont awoke to a new realization of a child's capacity for depravity and violence. Wade Willis, age sixteen, beat his pregnant girlfriend in the head with a baseball bat and left her for dead. Later that day he returned, realized she was still alive, and used a shovel to finish what he started. Then he buried her. *State v. Willis*, 145 Vt. 459, 464, 494 A.2d 108, 110 (1985). A week earlier, in another county, Louis Hamlin, age sixteen, along with his fifteen-year-old companion, grabbed two girls, ages twelve and thirteen, and dragged them into the woods where they shot the girls with BB guns, stomped on them, raped them both vaginally and anally, tortured and stabbed them repeatedly, and left them tied up. One of the girls died from a stab wound that punctured her heart. The other survived. *State v. Hamlin*, 146 Vt. 97, 99-100, 499 A.2d 45, 47-48 (1985). The Age of Innocence, whether the phrase is applied to the age of the youths or the attitude of the public, was irremediably altered by these events of these two days in May 1981.

¶ 33. Louis Hamlin's fifteen-year-old companion, who had been an equal participant in the vicious crime and at one point even claimed responsibility for the fatal stabbing, could not be charged in the criminal courts because he was under the age of sixteen. *In re Hamlin*, 155 Vt. 98, 99-100, 582 A.2d 129, 130 (1990). Juvenile delinquency proceedings were instituted against him. *Hamlin*, 146 Vt. at 100, 499 A.2d at 48.

¶ 34. The Legislature responded, calling a special session in July 1981 to significantly change Vermont's juvenile justice laws. The

law prior to 1981 required any court entertaining a criminal proceeding involving a defendant under the age of sixteen to transfer the matter to juvenile court. 33 V.S.A. § 635(a) (1980). In other words, a judge had no discretion to keep a matter in criminal court if the defendant was under the age of sixteen, no matter how heinous the crime. The Legislature then made numerous revisions to the statutes, including granting discretion to judges to keep fourteen- and fifteen-year-old defendants in criminal court if they were charged with one of eleven serious felonies. *Id.* § 635(b). State's attorneys were given discretion in where to file charges for older juveniles. *Id.* § 635(c). And the juvenile court was given discretion to transfer defendants aged ten through thirteen to criminal court if they were charged with one of the eleven listed serious felonies. *Id.* § 635a(a).

¶ 35. Then, in 1988, fourteen-year-old Steven Buelow raped and murdered his seven-year-old cousin. He was charged in criminal court and moved to have his case transferred to juvenile court pursuant to the statutes then in place, 33 V.S.A. § 635(b) and § 644(c), which read: "any proceeding concerning a child who is alleged to have committed an act specified in section 635a(a) of this title [the same acts listed now in § 5204(a)] after attaining the age of 14 but not the age of 18 . shall originate in district or superior court."[4] Murder, then as now, was included in § 635a(a)'s list of offenses. In *State v. Buelow*, we wrote, "[a]ccordingly, in situations where a fourteen-to-sixteen-year-old is charged with murder, the criminal court has exclusive original jurisdiction over the matter." 155 Vt. 537, 540, 587 A.2d 948, 950 (1990).

¶ 36. I agree that the statutes governing delinquency proceedings answer the question of whether the family division had jurisdiction to adjudicate this matter. Under 33 V.S.A. § 5103(a), the family division has "exclusive jurisdiction over all proceedings concerning a child who is or who is alleged to be a delinquent child." A "child" includes an individual "alleged to have committed . . . an act of delinquency after becoming 10 years of age and prior to becoming 18 years of age." *Id.* § 5102(2)(C). The family division properly dismissed the lewd and lascivious and sexual assault charges, finding that its jurisdiction was clearly limited to

---

[4] I believe the choice of courts reflects the older system of hearing most felony charges punishable by life in prison in the superior courts, while leaving lesser criminal charges in the districts courts. 4 V.S.A. §§ 114, 439 (1972). This older reality is still reflected in the current version of 33 V.S.A. § 5201(c).

children and that defendant was older than eighteen. It also correctly noted it could not transfer jurisdiction that it did not possess to the criminal division. I also agree with the majority that the newly enacted 33 V.S.A. § 5204a does not govern the case before us. The new statute is not a clarification; rather, it creates new law. I then part ways with my colleagues.

¶ 37. While 4 V.S.A. § 33(8) grants the family division "exclusive jurisdiction to hear and dispose of . . . [a]ll juvenile proceedings filed pursuant to chapters 51, 52, and 53 of Title 33, . . . whether the matter originated in the criminal or family division of the superior court," it cannot be rigidly interpreted as controlling any matter involving a child actor when other statutes establish a parallel jurisdiction in the criminal division. Section 33(8) does not eliminate the statutes governing transfers from other divisions. Moreover, this is no longer a juvenile proceeding. There is no juvenile before the court. Defendant is not a child.

¶ 38. When creating the juvenile justice system, the Legislature gave special attention to eleven (now twelve) serious felonies, one of which is sexual assault. 33 V.S.A. § 5204(a). And, the statutes continue to provide that any proceeding concerning a *child* after attaining the age of fourteen, but not the age of eighteen, who is alleged to have committed one of the serious felonies "shall originate in district or superior court." *Id.* § 5201(c); see *infra*, n.4. The delinquency procedures provide that a *child* as young as ten may be treated as an adult if he or she is alleged to have committed one of the serious felonies specified in § 5204(a). 33 V.S.A. §§ 5102(2)(C)(i) and 5204(a). And, if the case was commenced in the family division, it can be transferred to the criminal division when there is probable cause to believe that the child committed one of the listed acts and when "public safety and the interests of the community would not be served by treatment of the *child* under the provisions of law relating to juvenile courts and delinquent *children*." *Id.* § 5204(c) (emphases added). Obviously the Legislature always understood that some actions, even when done by someone as young as ten years of age, should be handled as a criminal prosecution. Murder, for example, comes to mind.

¶ 39. This view runs counter to the majority's assumption that it is the age of the perpetrator at the time of the offense that exclusively determines jurisdiction. This view is supported by provisions of 33 V.S.A. § 5203(a), which direct the criminal division

to transfer to the family division any case filed against a defendant under the age of sixteen at the time of the offense, unless it is one of the offenses specified in § 5204(a).[5] Then, § 5203(b) gives the criminal division discretion to transfer a case if the defendant was between the age of fourteen and sixteen at the time an offense specified in § 5204(a) was alleged to have been committed, and, if transferred, "the *minor* shall thereupon be considered to be subject to this chapter as a child charged with a delinquent act." (Emphasis added.) However, by the very language used, the jurisdictional choices found in § 5203 only govern cases against *minors*. It does not address charges against adult defendants. That distinction takes this case out from under the governance of those statutes. Given the statutory structure in place, it is equally reasonable to find that it is the alleged actions of the perpetrator that control the jurisdiction of the criminal division.

¶ 40. Reading the entire statutory scheme involving criminal jurisdiction in pari materia to ascertain the Legislature's intent, *In re Willey*, 2010 VT 93, ¶ 11, 189 Vt. 536, 14 A.3d 954, there is no indication that the Legislature intended to allow adult defendants to completely avoid the results of their actions as a juvenile. Chapter 52 of Title 33 is a comprehensive act governing juvenile delinquency proceedings with the overarching goal of protecting children who are still growing and maturing from the consequences of their actions. See *In re G.T.*, 170 Vt. 507, 532, 758 A.2d 301, 318 (2000) ("[T]he focus of delinquency proceedings in general . . . is on protecting children . . . ." (Johnson, J., dissenting)); *In re P.M.*, 156 Vt. 303, 310, 592 A.2d 862, 865 (1991) ("We recognize that the purpose of Vermont's juvenile provisions is not to punish juvenile offenders, but to . . . provide treatment consistent with the public interest for children who have committed delinquent acts."); see also 33 V.S.A. § 5101(a) (construing juvenile judicial proceedings chapters "[t]o remove from children committing delinquent acts the taint of criminality and the

---

[5] Thus, the criminal division properly recognized the clear statutory mandate to transfer the L&L charge to the family division because defendant was under sixteen at the time of the alleged lewd and lascivious conduct and L&L is not one of the twelve serious crimes enumerated in 33 V.S.A. § 5204(a). As a final consideration of the L&L charges, I note that the statutory scheme creates a de facto statute of limitations on unlisted crimes in certain situations.

consequences of criminal behavior and to provide supervision, care, and rehabilitation").

¶ 41. However, the protections of the juvenile justice system are designed for children, not adults. The majority emphasizes the young age of the defendant when the acts alleged were committed and discusses the goal of juvenile proceedings to protect and rehabilitate youth in trouble. It posits that the policy behind the juvenile justice system takes into account that a child who commits a felony offense is still a child and "his culpability must be viewed in light of his age." *Ante*, ¶ 19. I agree, especially in a case where the allegation is sexual assault by a thirteen-year-old. However, there is nothing to preclude a defendant charged with committing a sexual assault when he was thirteen from moving to dismiss a charge against him, arguing, for example, that, due to his tender years, the State will be unable to prove the requisite intent to satisfy the elements of the offense. See *Northern Sec. Ins. Co. v. Perron*, 172 Vt. 204, 215, 777 A.2d 151, 159 (2001) (explaining that it is "improper to [automatically] infer an intent to injure in cases where a minor sexually abuses another minor"). Questions that surround juvenile adjudications — brain development, emotional maturity, and impulse control — do not disappear when raised by a defendant charged with an act committed while a child. Moreover, failing to allow a prosecution to go forward removes any ability of the State to offer rehabilitative services to a man who, as a child, allegedly committed a felonious act of sexual assault, leaving him untreated.

¶ 42. Further support for this position is found in the statutes governing youthful offenders. 33 V.S.A. §§ 5281-5288. By its terms, § 5281 contemplates criminal charges being brought against a child the age of ten in the criminal division. It reads: "A motion may be filed in the criminal division . . . requesting that a defendant under 18 years of age in a criminal proceeding who had attained the age of 10 but not the age of 18 at the time the offense is alleged to have been committed be treated as a youthful offender." *Id.* § 5281(a). If the motion is granted, the case can be transferred to the family division. *Id.* § 5281(b). Obviously, some criminal charges against ten-year-olds are filed in the criminal division. With such statutory provisions in place, I cannot think the Legislature ever intended to leave a thirteen-year-old unaccountable for murder, arson resulting in death, assault and robbery with a dangerous weapon, or kidnapping. Public protec-

tion requires that former children who committed very serious felonies be accountable in a court of law. I would much prefer a court evaluate legislatively designated criminal behavior and impose any necessary rehabilitative restrictions rather than letting a calendar decide the outcome.

¶ 43. While the provisions of newly enacted 33 V.S.A. § 5204a cannot be applied in this case, I find the expression of legislative intent found in the preamble to Act 16 to be instructive: "[T]he general assembly never intended the juvenile procedures statutes to be used to permit a person who commits a crime to escape the consequences of that behavior simply by turning 18 before the state has filed charges against the person." 2011, No. 16, § 1. That expression of intent strongly suggests that the criminal division has always had jurisdiction over a case involving the crimes enumerated in § 5204(a) when the offender is now an adult.

¶ 44. I am authorized to state that Chief Justice Reiber joins this dissent.